785 P.2d 119

**John C. GRIFFITH, Jr., an individual, Plaintiff–Appellant,**

v.

**Howard A. FALTZ and Mary Faltz, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 88–496.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 4, 1990.

John C. Griffith, Jr., Los Angeles, Cal., in pro per.

Fritz & Childers by James W. Fritz and Jeffrey H. Wolf, Mesa, for defendants-appellees.

BROOKS, Judge.

This is an appeal from a summary judgment entered in favor of the president of a condominium homeowners' association in an action against him for wrongfully towing the vehicle of a visitor to the condominium complex. We consider whether A.R.S. section 33–1251(A) requires that a complaint alleging tortious conduct by a condominium unit owner be brought against the homeowners' association. We hold that it does not, and we therefore reverse the judgment and remand for further proceedings.

### FACTS

We state the facts in a light most favorable to the appellant. *Franko v. Mitchell,* 158 Ariz. 391, 393, 762 P.2d 1345, 1347 (App.1988).

On January 20, 1988, appellant John C. Griffith Jr. visited a resident of the Virginia Park Villas, a townhouse condominium complex located in Phoenix. Griffith parked his automobile in a parking space located inside the complex. Appellee Howard A. Faltz, president of the Virginia Park Villas Homeowners' Association, lived in a townhouse approximately two doors away from the resident with whom Griffith was visiting. Faltz telephoned Sun Valley Towing, Inc., which towed Griffith's vehicle from the parking space to a storage yard in accordance with Faltz's instructions.

Griffith sued Faltz and his marital community, alleging tortious interference with chattels and property damage. He sought $125 for the cost of recovering his vehicle from Sun Valley, a minimum of $100 for the cost of repairing damage to the vehicle, an unspecified amount for his inconvenience, and $500 as punitive damages.

Faltz answered, alleging as an affirmative defense that he was acting within the course and scope of his authority as president of the homeowners' association when he caused Griffith's vehicle to be towed. He later moved for summary judgment on the ground that Griffith should have sued the association. Following a hearing on Faltz's motion and an opportunity for the parties to submit supplemental pleadings,

the trial court entered summary judgment in favor of Faltz. Griffith filed a timely notice of appeal to this court.

## DISCUSSION

Faltz based his motion for summary judgment on A.R.S. section 33–1251(A) (Supp.1988), which provides:

An action alleging a wrong done by the association shall be brought against the association and not against any unit owner.

Faltz argues that the statute bars a lawsuit against an individual unit owner for acts done on behalf of the association. He argues that Griffith was required instead to bring his lawsuit against the Virginia Park VIllas Homeowners' Association.

Griffith contends that the statute is inapplicable to his lawsuit because he alleged that Faltz, and not the association, had committed a wrong. He argues that an individual is always accountable for his own personal torts and is the proper party to an action based upon that tort. He asserts that the statute could not contemplate allowing a tortfeasor to escape liability merely by alleging that his tortious conduct was done on behalf of a homeowners' association.

The statute in question is part of Arizona's version of the Uniform Condominium Act—A.R.S. sections 33–1201 to –1270. Arizona Revised Statutes section 33–1251 is based upon section 3–111 of the Uniform Act.[1] We have found no cases construing either A.R.S. section 33–1251(A) or the Uniform Act's section 3–111 as adopted by other jurisdictions. However, the comment to section 3–111 gives some insight into its meaning. The comment states in part:

This section provides that any action in tort or contract arising out of acts or omissions of the association shall be brought against the association and not against the individual unit owners. This changes the law in states where plaintiffs are forced to name individual unit owners as the real parties in interest to any action brought against the association.

Uniform Condominium Act § 3–111, 7 U.L.A. 517 (1985).

The authors of the Uniform Act were apparently concerned, not with providing a shield of immunity for individual unit owners, but with eliminating any requirement that each individual unit owner be named in a lawsuit against the association. This is consistent with A.R.S. section 33–1242(4) (section 3–102(a)(4) of the Uniform Act), which empowers the association to initiate, defend, or intervene in litigation.

Although this court is not bound by the interpretation of the Commissioners on Uniform State Laws, that interpretation is highly persuasive and should be adopted unless it is erroneous or contrary to the settled policy of the state. *Valley Nat'l Bank v. Avco Dev. Co.*, 14 Ariz.App. 56, 60, 480 P.2d 671, 675 (1971). We find nothing in the legislative history of A.R.S. section 33–1251 to suggest that Arizona's intent differs from that of the authors of the Uniform Act.

The Arizona Legislature has set forth certain guidelines for interpreting the Uniform Condominium Act:

The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this act, except to the extent inconsistent with this act.

Laws 1985, ch. 192, § 6(A). Assuming, for the sake of argument, that Faltz was acting on behalf of the association, we look to the law of principal and agent to determine how this relationship affects Faltz's individual liability for a tort.

It is well-established law that an agent will not be excused from responsibility for

---

**1.** A.R.S. § 33–1251 and the Uniform Condominium Act § 3–111 are not identical. However, subsection A of A.R.S. § 33–1251 is taken verbatim from the second sentence of § 3–111 of the Uniform Act.

tortious conduct because he is acting for his principal. The *Restatement (Second) of Agency* § 343 (1958) provides:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, on a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.[2]

Comment d to that section states, "[T]hose who assist in the wrongful removal of chattels ... are subject to liability together with those for whom they act...." The *Restatement* rule is consistent with the principle that whether an agent is acting on his own behalf or for another is immaterial to his liability for his violation of duties that he owes independently to third parties. *See generally* 3 Am.Jur.2d *Agency* § 309 at 813 (1986). *See also Carrel v. Lux,* 101 Ariz. 430, 442, 420 P.2d 564, 576 (1966).

The express intent of the legislature in enacting the Uniform Condominium Act was to incorporate the general law of principal and agent unless it is inconsistent with the statute. The comment to section 3-111 of the Uniform Condominium Act indicates no intent to modify the general law of principal and agent. We conclude that A.R.S. section 33-1251 does not bar Griffith from suing Faltz for Faltz's allegedly tortious conduct.

The judgment is reversed and the matter is remanded to the superior court for proceedings in accordance with this opinion.

GRANT, C.J., and VOSS, J., concur.

---

**2.** There was no assertion below that the association had any "privilege" to tow Griffith's vehicle as "privilege" is used in § 343. *See also Restatement (Second) of Agency* § 217 (1958); and *Restatement (Second) of Torts* § 10 (1965).